IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ROSE H. FAILS,
      Plaintiff,

vs.                          Case No.: 3:11cv581/LAC/EMT

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration,
      Defendant.
_____/

## REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. § 401, *et seq.*  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

I.      PROCEDURAL HISTORY

On April 23, 2008, Plaintiff filed an application for DIB, and she alleged therein disability beginning December 15, 2000 (tr. 14).[1]  Her application was denied initially and on reconsideration, and Plaintiff then requested a hearing before an administrative law judge ("ALJ").  A hearing was held on June 29, 2010, and on September 17, 2010, the ALJ issued a decision in which she found

---

[1] All references to "tr." refer to the transcript of Social Security Administration record filed on February 21, 2012 (doc. 4).  Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system.

Plaintiff "not disabled," as defined under the Act, at any time through the date of her decision (tr. 14–23). On October 6, 2011, the Appeals Council denied Plaintiff's request for review (tr. 1). Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court. <u>Ingram v. Comm'r of Soc. Sec. Admin.</u>, 496 F.3d 1253, 1262 (11th Cir. 2007). This appeal followed.

II.    FINDINGS OF THE ALJ

On September 17, 2010, the ALJ made the following relevant findings (*see* tr. 14–23):

1)    Plaintiff last met the insured status requirements of the Act on December 31, 2005.[2]

2)    Plaintiff did not engage in substantial gainful activity during the relevant period.

3)    Plaintiff had several severe physical and mental impairments through the date she was last insured—including sensory neural hearing loss, obesity, gastroesophageal reflux disease ("GERD"), osteoarthritis, depression, and anxiety—but she had no impairment or combination of impairments that met or medically equaled a listed impairment.

4)    Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567[3] with some exceptions, including a restriction from working around dangerous machinery or unprotected heights and a limitation to jobs requiring the performance of only simple, routine and repetitive type tasks.

5)    Plaintiff was unable to perform any of her past relevant work as a hospital cleaner, yard good salesperson, or commercial cleaner.

6)    Through the date last insured, considering Plaintiff's age, education, work experience, and RFC, there were other jobs existing in significant numbers in the national economy she could have performed (e.g., cafeteria attendant, garment folder, laundry article sorter); therefore, Plaintiff was not disabled during the relevant period.

III.    STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. <u>Carnes v. Sullivan</u>, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may

---

[2] Thus, the time frame most relevant to this appeal is December 15, 2000 (date of alleged onset) to December 31, 2005 (date last insured).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g), the Commissioner analyzes a disability claim in five steps:

1.      If the claimant is performing substantial gainful activity, she is not disabled.

2.      If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.      If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.      Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her RFC and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  20 C.F.R. § 404.1512.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.      PLAINTIFF'S MEDICAL HISTORY[4]

During the relevant period Plaintiff was treated by Gary Gotthelf, M.D., an internal medicine specialist (*see* tr. 316), for intermittent problems with GERD, obesity, shoulder and back osteoarthritis, depression, and anxiety.  Dr. Gotthelf treated the osteoarthritis conservatively with steroids, nonsteroidal anti-inflammatory medications, and occasional injections and physical therapy.  He did not offer Plaintiff surgery or an orthopedic referral.  Dr. Gotthelf's records show that Plaintiff's symptoms waxed and waned and were aggravated primarily when she lifted her

---

[4] Unless otherwise noted, the information in this section is derived from the opinion of ALJ.  Moreover, as Plaintiff raises only one issue in this appeal (that is, that the ALJ erred in rejecting the opinions of Dr. Gary Gotthelf, a treating physician), the medical history is abbreviated in this section but supplemented as necessary in the Discussion section of this Report.

grandchildren or buckets of water.  On March 17, 2000, Dr. Gotthelf noted that Plaintiff had reduced anterior flexion in her back, but that her posterior flexion, lateral bending, and rotational movements were normal.  He also noted that Plaintiff was able to heel and toe walk "nicely" and tandem walk "well."  Plaintiff had a negative straight leg raise test when lying down but a positive test on the right when sitting.  Plaintiff's reflexes were normal; muscle tone, strength, and sensation were good; and pulses in her lower extremities were good.

In 2003, Plaintiff began experiencing problems in her right shoulder, such as decreased range of motion and bicep tendonitis, but her problems responded well to treatment with steroids.  Lumbar spine x-rays obtained in July 2003 revealed only "mild degenerative disc changes"; right shoulder x-rays obtained in September 2003 revealed no fracture, misalignment, or tissue calcifications; and left ankle x-rays on obtained in December 2003 were normal.  On September 27, 2004, Dr. Gotthelf noted "significant improvement" in Plaintiff's shoulder and low back condition and, further, that Plaintiff had "only minimal stiffness" in the morning.

Although Plaintiff did not see a psychiatric specialist or attend psychotherapy during the relevant period, and she has never been hospitalized for mental impairments, she received care from Dr. Gotthelf for intermittent problems with anxiety and depression that coincided with social stressors such as the death of her sister or problems with her son and grandchildren.  When she experienced bouts of depression and anxiety, she was prescribed Buspar and/or an antidepressant such as Lexapro or Paxil.  She reported to Dr. Gotthelf on numerous occasions that the medications worked well and greatly improved her psychiatric symptoms.  Moreover, on multiple occasions she voluntarily discontinued use of these medications due to symptom improvement.  On January 10, 2005, Dr. Gotthelf described Plaintiff's psychiatric condition as situational depression and anxiety.  He also noted that her condition was stable on several occasions, including May 24, 2002, December 12, 2002, November 6, 2003, February 5, 2004, and November 17, 2005.

Dr. Gotthelf also treated Plaintiff for numerous short-term physical impairments such as gastritis, upper respiratory infections, allergies, abdominal lesions, and bronchitis during the period of adjudication.  Additionally, he diagnosed restless leg syndrome, although his records reflect that this condition responded well to treatment with Requip.

V.     DISCUSSION

Case No.: 3:11cv581/LAC/EMT

Plaintiff raises one issue in this appeal.  She asserts the ALJ erred in rejecting the opinions of Dr. Gotthelf, as contained on a RFC assessment form he completed at the request of Plaintiff's counsel on January 26, 2009 (*see* doc. 6; tr. 312–14).[5]  The Commissioner contends the ALJ did not err in rejecting these opinions and, further, that substantial evidence in the record as a whole supports his final administrative decision that Plaintiff was not disabled within the meaning of Title II of the Act (doc. 7).

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  *See* Lewis v. Callahan, 125 F.3d 1436, 1439–41 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); Sabo v. Chater, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d).  "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  Phillips v. Barnhart, 357 F.3d 1232, 1240–41 (11th Cir. 2004) (citation omitted).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  *See* Edwards, 937 F.2d 580 (finding that the ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).

However, if a treating physician's opinion on the nature and severity of a claimant's impairments is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).

When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in

---

[5] In short, if accepted as true Dr. Gotthelf's opinions on the RFC assessment form—which in part limit Plaintiff to a combined total of six hours of standing, walking, and sitting in an eight-hour workday and describe Plaintiff as disabled from full-time, continuous employment (*see* tr. 313–14)—would render Plaintiff disabled (*see* tr. 54–55 (testimony of the vocational expert)).  His opinions are discussed in greater detail *infra*.

the medical issues at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether Plaintiff meets a listed impairment, her RFC (*see* 20 C.F.R. §§ 404.1545, 404.1546), or the application of vocational factors, because those ultimate determinations are the providence of the Commissioner. 20 C.F.R. § 404.1527(e).

Here, in discounting the opinions of Dr. Gotthelf at issue, the ALJ noted as follows:

The undersigned has given little weight to the opinions set forth by Dr. Gotthelf in the [RFC] assessment provided on January 26, 2009. Dr. Gotthelf opined that, as of the date last insured, [Plaintiff] could walk a maximum of one to two hours in an eight hour work day, stand a maximum of one to two hours in an eight hour work day, and sit a maximum of one to two hours in an eight hour work day. He opined that she could lift a maximum of five pounds on a frequent basis and ten pounds on an occasional basis. He opined that she was restricted in her ability to climb ladders and bend and that she required extended rest during the day. He also opined that she experienced sedation as a side effect of her medications and that she was disabled from full-time continuous employment [and had been since on or before December 31, 2005].

Although Dr. Gotthelf is [Plaintiff's] long-term treating doctor, his opinion has been given little weight because it is not supported by the longitudinal medical record . . . . Dr. Gotthelf's treatment records reveal that [Plaintiff] had only intermittent problems with depression, anxiety, and osteoarthritis, and that these conditions responded well to treatment. X-rays revealed only mild lumbar osteoarthritis, and [Plaintiff] was never offered surgery. Dr. Gotthelf never observed [that Plaintiff] had any difficulty walking, decreased muscle strength, sensation loss, or other consistent signs of severe orthopedic impairment. His notes contain few references, if any, to balance issues or medication side effects. His opinions are also inconsistent with [Plaintiff's] own admissions regarding her activities of daily living. The undersigned further notes that Dr. Gotthelf is an internal medicine doctor and not an orthopedic or psychiatric specialist.

(tr. 20–21 (references to exhibits/transcript omitted)). The ALJ did not err in assigning little weight to Dr. Gotthelf's opinions because she articulated "good cause" for her decision to do so, <u>Lewis</u>, 125 F.3d at 1439–41, and the reasons she articulated are supported by the record.

Initially, it should be noted that although Plaintiff's file contains more than 300 pages of medical records (*see* tr. 183–501), the parties agree that only a small portion of those records are relevant to the time frame at issue and the claim raised in this appeal (*see* doc. 6 at 3 & doc. 7 at 3 n.2 (Plaintiff's memorandum & the Commissioner's memorandum, respectively, directing this court's attention to tr. 428–501 (Plaintiff) and tr. 201–213, 435–501 (Commissioner))). Thus, these are the pages on which the court primarily focuses its discussion.[6]

In discounting Dr. Gotthelf's opinions, the ALJ first found, correctly, that his opinions are not supported by the longitudinal evidence of record. The earlier records referenced by the parties concern a gynecological problem and related surgical procedure Plaintiff underwent in June 2003, and they do not provide support for Dr. Gotthelf's opinions; if anything, they actually contradict his opinions (*see* tr. 201–13[7]). The later records are Dr. Gotthelf's own treatment records, from January 2000 through May 2005 (*see* tr. 428–501), which also fail to support his January 2009 (and therefore retrospective) opinions. For example, the later treatment records reflect reports of episodic back pain related to Plaintiff's picking up her two-year-old granddaughter or playing with her grandson, and conservative treatment therefor such as bed rest and the application of heat or ice (tr. 432, 446). Dr. Gotthelf's treatment records also document unremarkable or only mildly abnormal diagnostic tests, which are inconsistent with the disabling limitations he later imposed (*see, e.g.*, tr. 434 (upper endoscopy showing only mild antral gastritis and unremarkable colonoscopy), tr. 483 (normal left ankle x-rays), tr. 484 (normal right shoulder x-rays), tr. 485 (lumbar spine x-rays showing only mild

---

[6] The court's February 28, 2012, Scheduling Order (doc. 5), in relevant part directed Plaintiff to file a memorandum that set forth her legal contentions and "<u>specifically cite[d] the record by page number for factual contentions</u>." (*Id.* at 1, emphasis in original). The court's Scheduling Order further instructed that the "<u>[f]ailure . . . to support factual contentions with accurate, precise citations to the record will result in the contention(s) being disregarded for lack of proper development</u>." (*Id.* at 2, emphasis in original).

[7] Plaintiff was examined by Donna Bennett, M.D., in June 2003 in connection with this surgical procedure. Dr. Bennett reported that Plaintiff had no musculoskeletal complaints, no difficulty walking, no pain in the extremities, and no present or past psychiatric problems (tr. 206). Further, Dr. Bennett described Plaintiff as "healthy appearing, well developed, [and] well nourished" (*id.*).

degenerative disc changes), tr. 486 (normal chest x-rays), tr. 487 (normal bone mineral density ("BMD" tests)). Additionally, Dr. Gotthelf's treatment notes confirm that Plaintiff had only intermittent problems with depression, stress/anxiety, reflux, and osteoarthritis and, further, that her conditions responded well to treatment (*see, e.g.*, treatment notes at tr. 434 ("Reglan [and Gas-X] working well"), tr. 434–35 (depression and anxiety "significantly better" with use of Buspar), tr. 437 (GERD symptoms and allergic rhinitis "stable"), tr. 472 (Plaintiff reported "doing well" with Klonopin)). *See* <u>Dawkins v. Bowen</u>, 848 F.2d 1211, 1213 (11th Cir. 1988) ("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling.") (citation omitted); *see also* <u>Brown v. Barnhart</u>, 390 F.3d 535, 540 (8th Cir. 2004) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.") (citations and quotation omitted); <u>Gates v. Astrue</u>, 627 F.3d 1080, 1082 (8th Cir. 2010) ("The medical record supports the conclusion that any depression experienced by Gates was situational in nature, related to marital issues, and improved with a regimen of medication and counseling.").

While it is true that at times Plaintiff presented to Dr. Gotthelf with complaints of mild to severe abdominal pain, low back pain, hip pain, shoulder problems and pain and/or generalized body aches, as her attorney points out (doc. 6 at 3–6), her subjective complaints of pain do not undermine the ALJ's findings or conclusions as to Dr. Gotthelf's opinions. First, the ALJ discredited Plaintiff's subjective complaints of disabling pain, and she articulated good cause for doing so, including that: (1) Plaintiff looked for work after the alleged onset date and testified that she did not work because her husband was the primary income earner in her family, and she chose to stay at home to help raise her grandchildren; (2) Plaintiff testified her son was diagnosed with epilepsy and that he was only allowed to keep custody of his children if she would agree to supervise them (which testimony, the ALJ found, "greatly damages the credibility of [Plaintiff's] allegations regarding her inability to maintain employment due to disability"); and (3) Plaintiff was able engage in a variety of daily activities—including bathing and grooming herself, helping care for her epileptic son and her grandchildren, driving, shopping for groceries, making appointments, attending church, visiting her sister, preparing meals, and cleaning (with breaks) bedrooms, bathrooms, and kitchens—which

activities are inconsistent with her allegations of disabling pain and limitations (tr. 19).[8]  Therefore, Plaintiff's subjective complaints of pain—having been properly discounted by the ALJ—fail to provide substantial support for the opinions rendered by Dr. Gotthelf in January 2009.  Second, even though Plaintiff complained of back, hip and shoulder pain, Dr. Gotthelf did not refer her to an orthopedic specialist or any other specialist, and he provided only conservative treatment.  His response to Plaintiff's complaints is inconsistent with the disabling opinions he later rendered.  *See* Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996) (ALJ may consider treatment that is "entirely conservative in nature" in discrediting a claimant's testimony); Miller v. Astrue, Case No. 8:07cv2074, 2009 WL 3516, at *5 (M.D. Fla. Jan. 6, 2009) (same); Woodum v. Astrue, Case No. 8:07cv404, 2008 WL 759310, at *3 (M.D. Fla. March 20, 2008) (ALJ properly considered that "limited and conservative treatment . . . is inconsistent with the medical response that would be expected if the physician(s) found the symptoms and limitations to be as severe as reported by the claimant").  Third, as discussed above, the results of various diagnostic tests were unremarkable and thus fail to substantiate Plaintiff's complaints.  Indeed, the absence of an objective medical basis to support the degree of severity of subjective complaints is an important factor to consider in evaluating the credibility of testimony and complaints.  *See* 20 C.F.R. § 404.1529(a) ("In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.").  And fourth, Dr. Gotthelf imposed no work-related restrictions and never opined—during the course of his treatment—that Plaintiff was disabled or otherwise limited in her ability to work.  *See* Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (citing Brown v. Chater, 87 F.3d 963, 964–65 (8th Cir. 1996) (lack of significant restrictions imposed by treating physicians supported the ALJ's decision of no disability)); Posey v. Astrue, No. 3:07cv356/MCR/EMT, 2008 WL 4187003, at *11 (N.D. Fla. Sept. 5, 2008) (ALJ properly considered that claimant's treating physician imposed no specific functional limitations resulting from her impairments) (citing Brown, 87 F.3d at 964–65).

---

[8] Plaintiff does not challenge the ALJ's credibility findings in this appeal.

The ALJ's other stated reasons for discounting Dr. Gotthelf's opinions are also supported by the record. These include Plaintiff's daily activities, as described by Plaintiff during her testimony ( which the ALJ relied upon in part in discounting her subjective complaints, as noted *supra*), as well as the daily activities reported by Plaintiff to Dr. Gotthelf. For example, in January 2005, Plaintiff told Dr. Gotthelf she watching her "3 ½ year-old grandson most of the time," in November 2005 reported she was "raising her grandkids," and in May 2005 she stated she had been "moving several buckets of water" during the past seven days (tr. 472, 467, 470). The ALJ also properly considered that Dr. Gotthelf is an internal medicine specialist, not an orthopedist, and that he did not (nor did any other physician) recommend surgery or observe that Plaintiff had difficulty walking, decreased muscle strength, sensation loss, or any other consistent signs of a severe orthopedic impairment. Finally, although Dr. Gotthelf opined that Plaintiff experienced sedative side-effects from her medications, which would interfere with her ability to work, he did not document any such side effects in his treatment records.[9]

## VI. CONCLUSION

For the foregoing reasons, Plaintiff is not entitled to relief on the lone issue she raises in this appeal, because the ALJ articulated the inconsistencies on which she relied in discrediting Dr. Gotthelf's opinions as to Plaintiff's ability to work, and the reasons she stated are supported by substantial evidence. Additionally, the Commissioner's final decision is otherwise supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d at1560. And finally, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making her findings, or that any other ground for reversal exists.

Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that the clerk be directed to close the file.

---

[9] In support of this claim for relief, Plaintiff primarily—if not exclusively—points to and relies upon the subjective complaints of pain or other symptoms she made to Dr. Gotthelf (*see* doc. 6 at 3–6). Plaintiff has not identified, and the court has not found, evidence of abnormal physical examinations, abnormal diagnostic studies (other than mild degenerative disc changes in the lumbar spine), or complaints of medication side effects.

Case No.: 3:11cv581/LAC/EMT

At Pensacola, Florida this <u>5</u><sup>th</sup> day of November 2012.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### <u>NOTICE TO THE PARTIES</u>

Any objections to these proposed recommendations must be filed within fourteen (14) days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).